Case number 253582, Flight Options LLC versus the United States of America, oral argument not to exceed 15 minutes per side. Mr. Saywell, you may proceed for the appellant. Good morning. Good morning, and may it please the court. Jim Saywell for Flight Options LLC. This record contains more than two million words, but it's six words that resolve the appeal. The amount paid for taxable transportation. Two parts of that phrase show why reversal here is proper. The first is the word for. In the context of a transaction, amount paid for something, the word for does not mean relating to or necessary for, as the government argues. It means in exchange for. The second part of that phrase, taxable transportation, in the context of 4262, which gives us the definition, does not mean all services that the carrier renders. It means specific domestic taxable flights. And when you put that together, what you have is money paid in exchange for particular domestic flights. We did provide that, and we collected tax on that, and we paid the tax to the government. What do we make of the salary? I think when you think of the monthly charges and insurance, servicing, those things favor you, I would say. But you can't have a plane without a pilot, and so if I'm understanding this correctly, the pilot fees are part of the monthly surcharge? They are. So why isn't that at least help the government on that particular issue? Because for a few reasons, we don't look at it that granularly. How we look at it is what amounts did flight options, in fact, charge, regardless of whether you flew or regardless of any particular domestic flights? One of those was for the pilots. Now, pilot salaries is something, this is the second point, pilot salaries, as a matter of fact, is just something that flight options has regardless of whether anyone is flying. So during COVID, for example, when people weren't flying, the pilots were still being paid. The fact that that's separated out and charged separately, again, independent of whether anyone is actually flying, is the key point here as the entire management fee. I get the point. I get the simplicity point, but you have to be ready for the hypothetical that, well, once this becomes the rule that we don't do it in a granular way, before you know it, the monthly charge is everything and each flight is a nickel. So does that then become substance over form? That is my answer to the hypothetical, and you're right. I've thought of hundreds of hypotheticals. Let's just do one. Well, let's do one. The nickel, I was thinking of a dollar, but even worse for a nickel. If a company did that, the IRS would have the tailor-made doctrine, substance over form. It doesn't make that argument here. It never suggested that here because the amounts that we are charging for management services do in fact reasonably approximate the stuff of ownership, right? Things that an owner of a plane has to cover regardless of whether they're using the plane. But if a company structured it that way, first of all, they never would because it wouldn't be economically viable. But if they did, hypothetically, that would be the answer. So my hypo was going to be all the commercial airlines now start itemizing tickets. So with Delta, a flight from Detroit to Cincinnati, they have so much for gas, so much for pilot time, so much for other things that are in your service charge. And then they say that we only have to pay 7.5% on a portion of that. What would your response to that be? The response there is that everything is still taxable. And the reason the answer is different is because you are paying that to United or Delta or whatever only in exchange for particular domestic flights. So those are still amounts paid to move from one place to another on a particular taxable flight, that really simplifying it means domestically, regardless of how they're separating it out. Here though, because of what makes us unique is ownership, right? So these people are not just paying usage charges to fly on domestic flights or international flights. They wouldn't pay the tax. They're paying for ownership. Why are they paying the uses? So there seems to be a disconnect. I thought the reason why they have to pay the usage fees is the IRS using the substance over form doctrine has essentially said they're not true owners. The principal is a flight, but your client. And if that's true for the usage fees, why is it not true for the monthly fees? So I think I'll answer that question first by starting with the background of how that came to be. We, of course, no longer make that argument on appeal that not even usage fees are taxable. How that came about was through revenue rulings and legislative history. And that wasn't consistent at all with our lead argument here that it's all about the text. But through legislative history and revenue rulings, the IRS said what matters is if the person has ownership, possession, command, control of the plane. And through a series of rulings, they held they don't. That test is bunk. That test is out. We're not advancing it. I don't think the government is advancing it either. So that's why that test is not the statutory test. And that's why it makes perfect sense that usage fees that are domestic flights would be taxed under our interpretation of the statute. And management fees, fees that are not paid in exchange for particular domestic flights, are not taxed. Do you think, does that mean that if, say it's a true owner, say if they own their own private plane, that they would have to pay some type of tax on usage? No. I mean, the true owner is not paying for, well, they would probably pay fuel surcharge, although I'm not exactly sure. Quite true. Isn't, what do they call this one, management fee surcharge. So you can have a situation where the monthly charges do go up because of usage. Yes. So what do we do with that? That would be a really good argument for the government if the statute said related to or directly related to usage, because that is, I mean, it does go up. The cost of ownership goes up the more you use anything, your car or your plane. So that, it is correlated. It's directly correlated with your usage, but it is not an amount paid for in exchange for particular domestic flights. And again, usage is not entirely as a category taxed. It's 4262. Just one other thing, and this just shows a little bit of ignorance. The main program is fractional ownership, but there is a part that seems almost like book of month club-ish, where you're, it seems more like charter, where you're paying not for ownership, you're paying for a right to use these planes twice a month. Right. So why shouldn't, why isn't that, shouldn't we distinguish those? We should distinguish those, and that's what we are, our appeal is distinguishing those. The one that is akin to charter, it's easiest to think of this as almost two businesses in one. The one side of the business is akin to charter, and that is the part of the business that we are charging you an hourly rate to fly the plane that you partially own. That is very much like charter, and that's why we collect tax on that and paid that tax. The other part of the business, the part that is ownership, the management fees, is nothing like charter. When you, I've never flown charter, but apparently if you fly charter, you, there's nothing, there's no other fee you pay. You are paying one fee, and it's in exchange to be flown on particular domestic flights. So we are taxing or collecting on that part of the business, but not on the part that is, that is about ownership. So this pro-taxpayer canon, no surprise you're representing a taxpayer. I can see how you'd like it. I suspect there are lots of tax canons, some health taxpayers, some not health taxpayers. Is this, what, what's the roots of this one? Is this just, there's a couple of good cases, or is this one, is it more lenity? Is there really anything to this other than, forgive me, slight opportunism by the lawyers? There is, this is, your honor called lenity the most venerated and venerable canons. This is right next to it. This came in from the English common law, clear and express is how they would put it in a tax statute. Justice Story explained in the Wigglesworth case that this is a well-established canon by 1830s. And it is, it is just like lenity. It has the same roots as lenity. And so it, and then it came through, through the, you know, 1900s when taxes started to be increased by the federal government, the Supreme Court unanimously accepting it. The interesting thing about this canon is why it fell off. And it is, it's the opposite of textualism. It fell off, and the literature is great on this, because of purposivism, because of your honor's comment about, you know, the tax, opportunistic, opportunistic. The court in the 1940s, 50s, 60s, the Supreme Court didn't want to side in favor of rich taxpayers. And so they instead looked at the legislative history and purposivism. And then the other reason it fell off was Chevron and Justice Thomas's opinions. And one of them was joined by Justice Scalia on that, a really interesting, you know, whether we defer to the government or whether we go with the taxpayer canon. Now, both of those aren't. If that case was written, you know, in 2026 by this current court, I think it well might have. I think it well might have said this is, this is a more aggressive form of the taxpayer canon. It's more aggressive because we're in a position of secondary tax liability as Central Illinois talked about. So I think one way to read Central Illinois is just like it's a form of the taxpayer canon that's more aggressive when we have to take from Peter to give to Uncle Sam. So that's one way of looking at it. I mean, another way of looking at it is it's a separate defense, and that's how a lot of courts have looked at it. And that is, including this court, adopting the district court's opinion in the Western Reserve Academy case. But I do think one way to look at it is it's just a form of the taxpayer canon. But, but whether it's a form or whether it's a separate defense, you know, it is extremely helpful here. And I think one point that, that as I was re, as I was rereading all the briefs that just stood out to me is the fact that the government, whether in Central Illinois or in the text, never argues that the text is unambiguous in its favor. Central Illinois provided the government the perfect opportunity to do that. You know, the whole test is whether our obligation was precise and not speculative. You would think the government would say it's precise and not speculative because the statute is unambiguous. And far from doing that, on page, I think it's 25 of their brief, they concede, the government concedes that the statute can mean what we say it means. Sure. And no, I, of course they might say it is today, but I think from the brief, it was, a pretty stark thing. And they don't talk about the taxpayer canon either. A question that, I guess this is for both sides that just, I wasn't sure I understood. There were, there are these regulations and, you know, speaking of regulations, you invoke some of the regulations because they exempt for parking. It kind of makes me laugh icing. I assume that's not the service. I assume it's de-icing, but anyway, I mean, it'd be very funny if they had an icing service, but anyway, you rely on these as exemptions. And then Congress comes back statutorily and gets rid of part of that regulatory regime, the deadheading and that stuff. But it's, it doesn't do anything with those regs like parking and we'll call it de-icing, which you still, how, how do we know those regs are still good since they got rid of some of them? What's the, what's the way, is that just, well, if they rest on whether the regs are good or not, our argument really about those regs is more so about what Congress did in fact incorporated into the statute into 4262D. I mean, the Congress picked out the two things that happened during a particular domestic flight. I thought you were relying on parking and de-icing. I mean, I think it's helpful. The government responds that that's obsolete and that's perfectly fine if it's obsolete for us. I don't know the answer to your honor's question about whether they're formally in effect or not. Right. What's, what's, this also is for both sides, but what, what's the IRS's authority? Just put Loeb or Breit Chevron to the side, just like a fresh regime. What did Congress give them authority to do on regs? Did they give them authority to fill gaps in statutes? What authority do they have? They have, I mean, this is, this is a highly reticulated, the internal revenue code. So they have, if in different parts, they have different authority. For the key part that's at issue today, they don't have authority to interpret the phrase, the amount paid for taxable transportation. They have authority to help, you know, institute how a refund claim works. They have authority to provide regs for certain, you know, logistical things around that. But they do not have the authority to provide, you know, to help interpret that phrase. They can't define transportation. Well, I mean, they, they can, but that would be, that, that would not be given any deference. I mean, they, they can, that would be, that would be a legal interpretation for the court. I, I see my time is up. Okay. Thank you. Thank you. We'll hear from the government. Good morning, Mr. Rennie. Yes. Good morning, Your Honors. Douglas Rennie for the United States. Your Honors, the, the reason the participants in these programs paid the monthly fees that were at issue here was to fly. And as the dictionary definitions we referenced in our brief indicate, for is a broad term that specifies the reason for an action. Consequently, we would submit that the payments for the monthly fees here were amounts paid for air transportation that are taxable under Section 4261. And we think that the Fifth Circuit in Bombardier reached the correct decision in this exact same context. The Shell Oil decision, which was, which is Federal Circuit precedent, was also correctly decided in a nearly analogous context. The Federal Circuit case? Is that what you're talking about? Shell Oil, it was decided by the Federal Circuit's predecessor, the Court of Claims. Yeah. But, but is that, is that the one on usage? It, it discusses monthly fees and hourly charges. I, I didn't, I didn't, my recollection was there was only precedent on usage, not on monthly fees. I, I think overhead management would, had not been resolved. I'm sorry, Your Honor. I think we're talking about different cases. I think you're referring to the Executive Jett case from the 1990s. I'm referencing the Shell Oil decision, which I believe is dated 19, in the 1970s from the Court of Claims, the Federal Circuit's predecessor. Which we think, in that case, there was a dispute over helicopter services being provided by, for Shell. And they were being charged a monthly fee in addition to an hourly fee. And according to the decision, the monthly fee there covered overhead charges and things of that nature. And the hourly fee was just charged for flying time. How would you, what's your, what's your rule slash standard for deciding how this works? We would say it's a by reason of. It's, it's what the plain meaning, the ordinary meaning of the word for is here. It's not a... Well, if that's a test, why wouldn't it just be the usage? That just seems like the most natural reading to me. Well, number one, because the reason people are paying any of these is to fly. They're not paying this to maintain the long-term. But that's actually not quite true. They don't always fly. They don't use it. That's, that's the whole problem. They might not fly in a month. They might not fly in a year. They might not fly every month, but they can't fly at all if they're not paying the monthly fees. And that's why I think your test is a but-for test. Well, I, I disagree, Your Honor, but I think there's also a factual problem here with their argument. Why don't you charge the tax 4261 on the initial ownership purchase? If you don't own, you can't fly, and you don't charge for that upfront payment. Why, why, why isn't that, if, if this position you have today, why isn't there a consistent corollary that they should have to pay when they buy their initial share if they're on the factional ownership side? We probably should have, Your Honor, in this instance, because it's, in our view, it's... You just have to, isn't your brain just going crazy when you said that? We probably should have. That just proves the whole inconsistency Central Illinois premise of this appeal. They don't know what they're doing. They're going here, there, and the other where, and the poor, when you have to be, you're the collection agent, and you're hammered in either direction. Well, we think they have, we probably should have, and this is, what is this, like a 50-year industry? About 30 years, I think, Your Honor. All right, time enough to figure a position out. Well, we think there's been clear guidance. There's been a clear indication as to our position over time on the monthly fees. You just said we probably should have, like, there is no principle. The answer is we probably should have to a very big 4261 potential tax. Well, I think the reason that the IRS probably did not do that at the time is because they were treating it, that fee, as akin to purchasing an ownership interest, whereas in reality, we have seen that this is not really an ownership interest. It's really more of an opportunity to participate. By 2010, you'd figured that out? Again, with respect, if we're talking about Central Illinois, I think the essence of that opinion is what guidance did the IRS provide, and in this case, they had repeated statements from the IRS on what our position was on the monthly fees, and that included as of prior tax periods. In 2008, they had an audit report saying that we thought they were liable for these fees, and if they did not object within a certain time period, I believe it was 30 days, that would have been assessed, and they asserted a Central Illinois defense back then, so they knew all along what the IRS's position was for these tax periods covering 2009 through 2012. I still don't know what your position is. Given that you said we probably should have this to the initial upfront, I can't make heads or tails out of it. I honestly can't. I mean, I don't know. If you're right, I mean, if you're not going to tax that, why couldn't they, in retrospect, have just said, hey, we're not doing the monthly thing anymore. It's just a for-life situation, and the monthly fees, you're just going to pay for life, and here's the fee, or you're going to pay as long as you have the fractional ownership or as long as you're doing the charter option. Now they're exactly the same. All it is is management and overhead and ownership, I guess. It just doesn't seem right to me, particularly in a collection setting. Can you imagine if Walmart had this kind of debate as they're processing everything of when they do the tax on the purchase and when they don't? I don't know how you could implement this. I understand your point, Your Honor, but I think that the ordinary meaning of for means that if you're paying amounts for air transportation, which is the case here, which is what these four people are paying these amounts to fly, they can't fly if they don't pay them, then they're taxable. You can't fly if you don't get to the airport. That's parking. That's Uber. There's no such thing as flying. That's not air transportation. There is no such thing as flying if you don't have a place to wait, an office, a NetJet's office to wait in until you fly. I mean, there's just a ton of these, but for reasonably necessary expenses. But that's not air transportation. That's, you know, you can get to the airport, you can wait in various different ways, but the reason you're... This is not air transportation. And if they had separated out those charges, they might have had a better argument. Was there ever a part of this case where the revenue services position was, okay, let's be granular here and we're going to, we think that the salaries we really ought to tax, but insurance, parking, maintenance, we're not going to because that really is overhead management. Was that ever part of either this case or other cases or did everyone just take the view, we just got to do an all or nothing at all approach? Well, the regulations have long provided that if you do not separate non-transportation from transportation services clearly, then the tax applies on the full amount. And I believe that's section 49.4261-2C. So you're, am I getting this right? It was on them to do that? That's, it's their burden in the same, and it's in the statute as to domestic versus international travel. That's 4263-D. That seems a little different. If you pay amounts in the United States for transportation, they're presumptively for taxable transportation. That would be my question. You haven't, it seems incredibly unworkable to divide the management fees up between international and domestic. And your brief said nothing on this. Obviously it only applies to, under the plain text of the statute, it only applies to domestic travel, except with maybe some exceptions. But the IRS hasn't taken a position on how you divide these management fees up. Well, that's where this presumption that I just mentioned kicks in. It's 4263-D. It says if you're paying the amount in the United States for transportation, it's the taxpayer's burden to show that it's not for taxable transportation. In other words, international travel, you have to come up with... Is it even possible you'd have to come up with some type of apportionment? I guess it would be based on the average percentage of which these planes go overseas. You could do something like that, I suppose. It seems quite unworkable, and it's not so far removed from the statute. Isn't that kind of a point against you? Well, it is in the statute, Your Honor. I think the divisibility is imagining, you know, Columbus to New York, New York to Paris. That's not that hard to figure out, but the management overhead is what he's asking. That is ridiculously complicated. It may be more complicated, but again, it's the burden under the statute and the regulations is on the taxpayer to show that. That brings up the pro-taxpayer canon. What's your take on that? I think it's probably correct that it is a variation of the rule of lenity. It has not been consistently applied over the years, and I think it is in essence a tiebreaker canon that probably comes in at the end of the analysis if the court doesn't think that the text is clear, doesn't think that any of the other canons clarify it. And would you say Central Illinois is just a variation on it or maybe slight push-up because of the problem that you have to collect and not just pay? I think it's a separate doctrine, Your Honor. I mean, and that really only applies in instances. It's decided in the instance of withholding tax obligation, and the pro-taxpayer canon that we're talking about here is a broader rule akin to the rule of lenity. So Central Illinois is a much more specific doctrine that the court developed in that particular instance when they thought that the IRS was really taking a retroactive change of position that was simply unfair to the taxpayer. Okay, so what is your position? So say somebody could actually afford a private airplane, not a fraction of it. And they bought a private airplane. Would that be a, that's not a taxable event? If it's a true purchase of the airplane, that's probably not strictly for air transportation. You could be buying that for any number of other reasons. You're getting an ownership interest. Why else would you buy a plane, not for transportation? Well, that might be the main reason you're going to use it, but it's not necessarily... Well, the problem I have with your test is I recognize your response repeatedly is your test, you've been clear that it applies to these monthly fees, but the problem is the logical implication of your, whether you call it a but-for, a reasonable relation test, is that it covers a whole bunch of other stuff that you don't tax. And that asymmetry is problematic to me. That suggests to me that it's not the right test because the logical implication of your test is that you should be taxing all the other stuff and you're not. Suggests to me maybe we should adopt the Nero test, which is workable. It's the whole problem of the big net and you just decide what fish to tax and what fish not to tax and that's arbitrary. I understand, Your Honor. I think that in this instance, all the court needs to decide is whether these monthly fees are... That's not true. We set a rule of law on what the statute means. And you're asking us to draw a line that just makes no sense. We disagree, Your Honor. Our position is that if you're paying, you can't fly if you're not paying these amounts, right? And they're not divvied up according to overhead and other things. It basically says flight options is going to provide all of these services, including flight arrangements, all necessary takeoff, flight, and landing arrangements involved for the participant's use of the aircraft. And in exchange for that, the participants pay the management fees and the usage charge. And it's not split up according to whether these... Whether you're talking about some are in the air and some are overhead. This is all money being paid to use the aircraft. So it's really a level of generality problem. So you're right that in some sense, everything you do to maintain an airplane is for transportation. But that's true of like what I do for my car. So when I get an oil change, I pay for the oil change. In some sense, that's for transportation. This could lead to an audit. That's for transportation. But I think the reasonable person would say that that was for an oil change. And so why wouldn't the same type of maintenance, the reasonable person would say these payments are for the specific activity, which is not for transportation? You know, I think in that instance, it probably is for the general maintenance or long-term. I mean, you would arguably say it's for transportation, right? I need to maintain my car in order to drive places. So I see your point about why it would be for transportation. But we have to decide which meaning is better. And I would think the ordinary person would say, no, that's for oil change. And there's a lot of indicia in the statute that suggests that should be at the more granular level rather than the high level of generality. Including, for instance, the specific travel items like that within the United States. It suggests that it's for that and not for these types of maintenance things. If I may answer, Your Honor. I see I'm over time. Even if that's the case, Your Honor, we would submit that it's still the taxpayer's burden to separate out those charges. And if you don't do so, it's taxable on the full amount. And can I ask just one final question? Is that in the statute or is that a reg, who the burden is on? It's a reg, Your Honor. It's a reg dating back to the 1950s. Okay, so just a couple other things. I asked your colleague on the other side about the parking, icing, sanitation. What's the status of those regs given the fact that the statute overrode some of them? Are the ones that the statute doesn't touch operative from your perspective? Or what's the status of those regs? There might be an argument that that part of that particular regulation is still in effect, the one addressing the icing and parking, etc. But again, if it has the same separation requirement in there where it says if separable, then these charges are not taxable is how it starts off. I think it's F-5. It's not but-for. That's the key point. It shows it's not but-for or reasonably necessary, right? If someone didn't pay their 4261 excise tax, there's penalties. Is there a criminal liability for violating 4261 eventually? I mean, if it's, I mean, not this case, but like a case where you know, they're just not doing it. I'm not aware of a statute that specifically criminalizes this. I was thinking there were general statutes that said if you don't follow the code, you can be subject to criminal liability. That's what I thought because that's true in most agencies. If you make a false statement on your tax return, that's the most common tax charge which applies to, you know, every tax return or tax evasion, but there has to be a deficiency in an intent to evade. Of course, that all has mens rea requirements of that nature. I see. So there would never, without the mens rea, there would never be criminal liability. I believe that's correct, Your Honor. Yeah. Can I ask one just clarifying question? It wasn't obvious to me why there had to be a definition that layover is transportation. Is the reason because you're using the layover to divide domestic from international and a layover in domestic would count that portion as domestic for tax purposes for like a trip that's both domestic and international? That was a phase for a layover, so amounts paid for transportation. Well, I'm gonna pay extra for a layover. I don't think anybody, so it was hard for me to get a handle on why layover is defined as part of the transportation. I think that was part of that provision that's overruling this regulation that we were just talking about, which listed a number of things, and then Congress came back and said specifically, no, we disagree with that layover waiting time. It may just be that Congress decided it's too difficult to for anybody to separate out or it shouldn't be separated out, so we think it's all taxable. Thank you. Thank you very much. Thank you. I'm more confused about what their test is, but I'm more sure that it's a but-for test and as Judge Murphy said that the logical implication of that, you know, there are no limiting principles for the government. It now apparently includes buying your own plane, which I do think is consistent with any amount you must pay in order to use our program. That is a gerrymandered test to get management fees. It's not a principled test, and it is certainly not the test that this court must apply by reason of the clear and unambiguous statutory language. Their only response to that is to say, well, that's not, certain things are not for air transportation. The problem, then, that's what they say at 36 and 37 of their brief. That is exactly our point. There are certain things that are not in exchange for particular domestic travel, particular domestic flights. It also is unworkable, their test. It's, my client has told me, we can't, we cannot separate out at that granular of a level. The reg, so apparently there's a reg that says you have the burden of separating things out. Is that reg valid? It's not valid to the extent that it means that we have to separate out the hangar space on flights that were domestic versus flights that were international and not subject to this tax. It doesn't mean that. It means exactly what we did in 4.1a of the management agreement, 1227 of the record. We did separate these out as clear as day in the contract. The two charges were usage charges and management fees. Those are how we separated those out, and that's why our count one, which we've dropped, was about usage charges, and our count two was exclusively about management charges. So to the extent that the, I mean, that's what the regulation means, and we satisfied it. We did separate it out. Are there background norms, like the taxpayer has the burden to show something is not taxable based on a presumption, once a presumption is reached that it may be taxable? I think, and this is, this is I think how I'll end. I think if there's any background norm or presumption, it's the presumption that the taxpayer prevails if, if it's just... That's on statutory interpretation. I was more talking about burdens of proof and mitigation on facts. Yeah, so it is true. I think it's pretty well established that the taxpayer does have the burden of proof in this kind of claim, but it's also well established that when we're talking about statutory interpretation, burdens of proof fall away, and so we're just asking de novo what the statute means, and the presumption that then comes into play, I, my favorite formulation of it is in the lenity context from Chief Justice Marshall. If at the end of the day, your honors, mind hesitates between the two constructions, you go with us. You go with the taxpayer here, and you, and the court, and the court should do that and should reverse. Hey, thank you very much to both of you for your excellent briefs and arguments. This is a tricky case, and it helps us to have great lawyers, so thank you very much to both of you. Really appreciate it. Case will be submitted.